IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA GREGORY, individually, and as mother and next friend of her minor son, Brad Barrett, and RONALD GREEN, individually, and as the father and next friend of his minor son, Shaquill Green,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF EVANSTON, OFFICER KOCH, SERGEANT HEARTS-GLASS, DETECTIVE WILLIAMS, DETECTIVE DAVIS, and UNKNOWN EVANSTON POLICE OFFICERS,<br><br>Defendants. | No. 06 C 4093 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Patricia Gregory, individually, and as mother and next friend of her minor son, Brad Barrett, and Ronald Green, individually, and as the father and next friend of his minor son, Shaquill Green (collectively "Plaintiffs") bring the present twenty-four (24) count Complaint alleging violations of their constitutional rights under 42 U.S.C. § 1983, as well as state law claims. Defendants Thomas Koch, Tracy Williams, Angela Hearts-Glass, and Larry Davis (collectively, the "Individual Defendants") filed this Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Counts VI, VII, VIII, and IX of the Complaint. For the following reasons, the Court denies the Individual Defendants' Motion for Judgment on the Pleadings.

**LEGAL STANDARD**

Rule 12(c) motions for judgment on the pleadings differ from Rule 12(b) motions to dismiss because they are brought after the pleadings are closed. *See* Fed. R. Civ. P. 12(c); *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998) ("Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer."). Despite the difference in timing, the Court reviews Rule 12(c) motions under the same standards that apply to motions under Rule 12(b)(6). *Guise v. BWM Mortgage, LLC,* 377 F.3d 795, 798 (7th Cir. 2004). Under Rule 12(c), the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Thomas v. Guardsmark,* 381 F.3d 701, 704 (7th Cir. 2004). "A court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 718-19 (7th Cir. 2002). In determining a motion for judgment on the pleadings, courts may only consider the pleadings, which consist of the complaint, the answer, and documents attached as exhibits. *Housing Auth. Risk Retention Group, Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004).

**BACKGROUND**

Plaintiffs' Complaint arises out of an incident that took place on July 29, 2005 involving Evanston Police Officers arresting two minors for disorderly conduct in downtown Evanston, Illinois. Specifically, Plaintiffs allege that Evanston Police Officer Thomas Koch arrested Brad Barrett and Shaquill Green, both minors, without probable cause. (R. 1-1, Compl. ¶¶ 15-20.) Police then took the boys to the Evanston Police Department after which they placed the minors

in different interrogation rooms. (*Id.* ¶ 25). Upon learning of the arrests, Plaintiffs Patricia Gregory, Brad Barrett's mother, and Ronald Green, Shaquill Green's father, went to the Evanston Police Department. (*Id.* ¶¶ 26, 27.) Thereafter, the parents demanded to see their minor children, but the Individual Defendants "refused to provide the parents access to their sons." (*Id.* ¶¶ 27, 28.) The Complaint further alleges that Brad Barrett and Shaquill Green wanted to see their parents, but no one told them that their parents were at the Evanston Police Department. (*Id.* ¶¶ 30, 31.)

Eventually, the police brought Brad Barrett and Shaquill Green from the interrogation rooms to the waiting area where their parents were waiting, yet the police did not allow the parents to speak with their children at that point. (*Id.* ¶ 32.) Instead, Plaintiffs allege that the police required them to sign a document prohibiting their sons from being in downtown Evanston for seven days. (*Id.* ¶ 33.) The parents initially refused to sign the documents and demanded access to their children, yet the Individual Defendants did not allow the parents access until they signed the documents. (*Id.*) After the parents signed the documents, the police released Brad Barrett and Shaquill Green into the custody of their parents. (*Id.* ¶ 36.)

At issue are four counts of the Complaint based on the substantive due process right of familial relations under the Fourteenth Amendment. Specifically, in Count VI of the Complaint, Brad Barrett claims that the police violated his familial rights when they did not let him see his mother, Patricia Gregory. (*Id.* ¶¶ 63-67.) Similarly, under Count VII, Shaquill Green alleges that the police violated his familial rights when they did not allow him to see his father, Ronald Green. (*Id.* ¶¶ 68-72.) Plaintiff Patricia Gregory alleges in Count VIII that the police violated her familial rights when the police did not let her see her minor son. (*Id.* ¶¶ 73-77.) Likewise, in

3

Count IX of the Complaint, Plaintiff Ronald Green claims that the police violated his familial rights when the police did not allow him to see his son. (*Id.* ¶¶ 78-82.)

## ANALYSIS

### I. Qualified Immunity Standard

The Individual Defendants assert that the doctrine of qualified immunity protects them from this lawsuit. In general, qualified immunity shields government officers performing discretionary functions from civil litigation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). When determining whether qualified immunity shields a public official from a Section 1983 action, the Court undertakes a two-part inquiry. *Jones v. Wilhelm,* 425 F.3d 455, 460 (7th Cir. 2005). The Court's first inquiry is whether the facts, viewed in the light most favorable to Plaintiffs, show that the Individual Defendants violated a constitutional right. *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If the facts comprise a constitutional violation, the Court's second inquiry is whether the constitutional right was clearly established at the time of the Individual Defendants' conduct. *Wernsing v. Thompson,* 423 F.3d 732, 742 (7th Cir. 2005) (citing *Saucier*, 533 U.S. at 201). The Individual Defendants "will enjoy qualified immunity unless the court affirmatively answers *both* questions." *Jones v. Wilhelm*, 425 F.3d at 460 (emphasis in original).

### II. Substantive Due Process Right to Familial Relations

The Court first addresses whether the facts, viewed in a light most favorable to Plaintiffs,

4

show that the Individual Defendants violated Plaintiffs' constitutional rights. *See Saucier,* 533 U.S. at 201. Here, Plaintiffs allege that the Individual Defendants violated their substantive due process right to familial relations under the Fourteenth Amendment to the Constitution.

The Due Process Clause of the Fourteenth Amendment provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. In general, the Fourteenth Amendment establishes a "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). "The Supreme Court has long recognized, as a component of 'substantive' due process, that parents have a liberty interest in familial relations, which includes the right to 'establish a home and bring up children' and 'to control the education of their own.'" *Doe v. Heck,* 327 F.3d 492, 517 (7th Cir. 2003) (citation omitted). Substantive due process, however, does not cover state actions that were not purposely directed at the parent-child relationship. *See Russ v. Watts,* 414 F.3d 783, 787-88 (7th Cir. 2005) (citing cases); *see also Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property") (emphasis in original). As the *Russ* court emphasized, "[t]he Supreme Court has recognized violations of the due process liberty interest in the parent-child relationship only where the state took action specifically aimed at interfering with that relationship." *Russ*, 414 F.3d at 788. Accordingly, "finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set by the Supreme Court." *Id.* at 790. In thus holding, the *Russ* court overruled its

5

earlier decision in *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984), and held that the parent did not have a constitutional right to recover for the loss of society and companionship of her adult child. *Russ,* 414 F.3d at 790-91.

Thus, under Seventh Circuit and Supreme Court precedent, the Court must decide whether – viewing the facts and all reasonable inferences in a light most favorable to Plaintiffs – the Individual Defendants specifically aimed at interfering with the parent-child relationship when they denied the parents access to their minor children. *See id.* at 788. Plaintiffs specifically argue that their "claims are based on the Defendants acts and threats to take the boys away from Patricia and Ronald unless they agreed to sign documents that barred the boys from downtown Evanston." (R. 18-1, Pls.' Resp. to Rule 12(c) Mot., at 5.) The Individual Defendants, on the other hand, characterize the allegations differently. They argue that Plaintiffs are claiming that the police made an implicit threat not to allow the parents to speak to their children following the arrest unless the parents signed an informal station adjudication.

The Court, however, must view the allegations and all reasonable inferences in a light most favorable to Plaintiffs. *See Saucier,* 533 U.S. at 201; *Thomas,* 381 F.3d at 704. In doing so, Plaintiffs have sufficiently alleged that the Individual Defendants' actions were directed at the parent-child relationship and that these actions were not merely an "incidental result of state action," such as a parent's claim for loss of society and companionship of an adult child based on a police shooting. *See Russ*, 414 F.3d at 790-91. In short, Plaintiffs' allegations relate to the Individual Defendants' direct interference with Plaintiffs' fundamental right as parents to make decisions concerning the control of their minor children. *See Troxel,* 530 U.S. at 66; *see also Russ,* 414 F.3d at 790 ("minor children's need for the guidance and support of their parents

6

warrants 'sharply different constitutional treatment.'") (citations omitted).

Further, at this procedural posture, the Court will only grant the Individual Defendants' Rule 12(c) motion "when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Brunt,* 284 F.3d at 718-19; *see also Lujan v. National Wildlife Federation,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (at pleading stage, court presumes general factual allegations embrace specific facts necessary to support claim). Despite the Individual Defendants' argument to the contrary, Plaintiffs **can** prove a set of facts that support their claim for relief, namely, that the Individual Defendants specifically aimed at interfering with the parent-child relationship when they denied the parents access to their children until the parents signed certain documents.

Meanwhile, the Individual Defendants attempt to narrow the *Russ* decision by arguing that the substantive due process right to familial relations only protects matters such as the termination of parental rights, adoption, and child custody. This interpretation is not supported by the *Russ* decision, although the First Circuit has articulated that there are only two categories of familial liberty interests – private family decisions and governmental interference with a child's upbringing. *See Validvieso Ortiz v. Burgos,* 807 F.2d 6, 7-8 (1st Cir. 1986). In any event, viewing the facts in the light most favorable to Plaintiffs, they have shown that the Individual Defendants violated their constitutional right to familial relations. *See Saucier,* 533 U.S. at 201. Accordingly, the Court turns to the second qualified immunity inquiry to determine whether Plaintiffs' constitutional rights were clearly established at the time of the July 29, 2005 state action.

## III. Clearly Established Constitutional Rights

Under the second qualified immunity inquiry, it is Plaintiffs' burden to establish that their substantive due process rights were "clearly established" at the time of the July 29, 2005 incident. *See Wernsing*, 423 F.3d at 742. To do so, Plaintiffs "must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Id.* Whether the constitutional right at issue is clearly established is not necessarily "predicated upon the existence of a prior case that is directly on point." *Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Instead, the ultimate question is whether a reasonable public official would have known that his or her actions were unlawful at the time of the incident. *See Saucier,* 533 U.S. at 202; *Green,* 420 F.3d at 701.

### A. Factually Similar Case

First, Plaintiffs contend that *Doe v. Heck,* 327 F.3d 492 (7th Cir. 2003) is factually similar to the present matter and establishes that their substantive due process rights were "clearly established" at the time of the July 29, 2005 incident. In *Doe v. Heck*, the Seventh examined the right to familial relations in the context of child welfare caseworkers investigating child abuse allegations based on a private school using corporal punishment to discipline its students. *Id.* at 499. During the investigation, the caseworkers interviewed an eleven-year-old student at the private school about the use of corporal punishment and certain family matters even though the

8

caseworkers did not have a warrant or parental consent. *See id.* The caseworkers also threatened to remove this student and his siblings from their parent's custody. *See id.* The child welfare bureau ended its investigation due to the lack of information after which the school and parents filed a lawsuit alleging violations of the Fourth and Fourteenth Amendments. *See id.* The caseworkers filed a motion for summary judgment based on qualified immunity that the district court granted and the Seventh Circuit affirmed. *See id.* In analyzing the plaintiffs' familial relations claim under the Fourteenth Amendment, the Seventh Circuit explained:

> The liberty interest in familial privacy and integrity is "'limited by the compelling governmental interest in the protection of children particularly where the children need to be protected from their own parents,'" and does not include the right to be free from child abuse investigations. Nevertheless, it is necessary for both government officials and the courts to "be sensitive to the fact that society's interest in the protection of children is ... multifaceted, composed not only with concerns about the safety and welfare of children from the community's point of view, but also with the child's psychological well-being, autonomy, and relationship to the family or caretaker setting."

*Id.* at 520 (internal citations omitted).

In sum, *Doe v. Heck* is not factually similar to the present matter because the Evanston Police Officers did not threaten to physically remove the minor children from their parents' custody through administrative proceedings based on allegations of child abuse. Further, the present legal analysis does not concern the *parens patriae* duty of the state to protect children from their own parents. *See Reno v. Flores*, 507 U.S. 292, 303-304, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (parent's interests in child must be balanced against state's recognized interests as *parens patriae*); *Brokaw v. Mercer County,* 235 F.3d 1000, 1019 (7th Cir. 2000) ("balance must be reached between the fundamental right to the family unit and the state's interest in protecting children from abuse"). Accordingly, Plaintiffs' argument that *Doe v. Heck* shows that their

9

particular right to familial relations was clearly established at the time of the July 29, 2005 incident must fail.

B.  **Obvious Violation of a Constitutional Right**

The Court thus turns to the second "clearly established" test, namely, whether the alleged misconduct constituted an obvious violation of a constitutional right. *See Jones v. Wilhelm,* 425 F.3d at 460. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [public official] that his conduct was unlawful in the situation he confronted." *See Saucier,* 533 U.S. at 202; *see also Brosseau v. Haugen,* 543 U.S. 194, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004) (per curiam); *Hosty v. Carter,* 412 F.3d 731, 738 (7th Cir. 2005) (en banc). "The inquiry into whether a right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Borello v. Allison,* 446 F.3d 742, 750 (7th Cir. 2006) (citation omitted). Although this is an objective test, subjective factors are not ignored, such as the information the Individual Defendants possessed at the time they arrested the minor children and held them at the police station. *See Hammond v. Kunard,* 148 F.3d 692, 696-97 (7th Cir. 1998) (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Here, the Individual Defendants contend that they possessed statutory authority to conduct an "informal station adjustment" and that this statutory authority alone entitles them to qualified immunity. Specifically, Illinois law provides for "station adjustments," which allow police officers to formally or informally handle juvenile misbehavior. *See People v. Taylor,* 221 Ill.2d 157, 181, 302 Ill.Dec. 697, 850 N.E.2d 134 (2006) (citing 705 ILCS 405/5-301). "An informal station adjustment is defined as a procedure when a juvenile police officer determines

that there is probable cause to believe that the minor has committed an offense." 705 ILCS 405/5-301(1)(a). The statute also provides that:

> The juvenile police officer may make reasonable conditions of an informal station adjustment which may include but are not limited to
>
> > (i) Curfew.
> > (ii) Conditions restricting entry into designated geographical areas.
> > (iii) No contact with specified persons.
> > (iv) School attendance.
> > (v) Performing up to 25 hours of community service work.
> > (vi) Community mediation.
> > (vii) Teen court or a peer court.
> > (viii) Restitution limited to 90 days.

705 ILCS 405/5-301(1)(e).

The statute, however, does not allow police officers to detain juveniles in interrogation rooms and then refuse to release them to their parents until the parents sign the informal station adjustment documents as Plaintiffs allege. *See Thomas,* 381 F.3d at 704 (under Rule 12(c), court must accept well-pleaded allegations as true and draw reasonable inferences in plaintiff's favor). Based on the facts as alleged, the Individual Defendants are not entitled to qualified immunity because under the particularized facts of this case, a reasonable police officer in their position would have known that detaining the minor children and refusing to release them to their parents until the parents signed the station adjustment documents was unlawful conduct. Further, Plaintiffs unequivocally allege that the Individual Defendants did not have probable cause to arrest their children, and thus the Individual Defendants did not have authority under the station adjustment statute in the first instance.

As such, Plaintiffs have alleged facts that show that their substantive due process rights were "clearly established" at the time of the July 29, 2005 incident. *See Alvarado v. Litscher,*

267 F.3d 648, 651 (7th Cir. 2001) (if issue of qualified immunity "depends on the facts of the case, dismissal at the pleading stage is inappropriate"); *Jacobs v. City of Chicago,* 215 F.3d 758, 765 n. 3 (7th Cir. 2000) ("in many cases, the existence of qualified immunity will depend on the particular facts of a given case").  Nevertheless, after the parties develop the evidence as this case progresses, the doctrine of qualified immunity may apply.  *See Jacobs,* 215 F.3d at 776 (Easterbrook, J., concurring) ("the choice between [a] decision without evidence (Rule 12) and decision with evidence (Rule 56) could be decisive").

## CONCLUSION

Based on these reasons, the Court denies Defendants' Motion for Judgment on the Pleadings as to Counts VI, VII, VIII, and IX of the Complaint.

**Dated**:  December 15, 2006

                                                  **ENTERED**

                                          **AMY J. ST. EVE**
                                          **United States District Court Judge**